UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LEILANI HOPE RICKERT,**

Debtor.

Case No. **18-60937-13**

## MEMORANDUM of DECISION

At Butte is said District this 29th day of April, 2019.

In this Chapter 13 bankruptcy, a hearing was held April 11, 2019, in Billings on: (1) confirmation of Debtor's Chapter 13 Plan filed December 21, 2018 at ECF No. 46 ("Plan"); (2) Specialized Loan Servicing, LLC's Motion to Modify Stay filed January 22, 2019 at ECF No. 67; (3) Debtor's Motion to Compel Specialized Loan Servicing to Produce Documents filed January 31, 2019, at ECF No. 74; and (4) Debtor's Objection to Proof of Claim No. 5 of Specialized Loan Servicing filed February 11, 2019 at ECF No. 93[1]. Brian Porter appeared at the hearing on behalf of Specialized Loan Servicing, LLC ("SLS"), Clarence Belue made a limited appearance on behalf of Debtor to prosecute Debtor's Objection to Proof of Claim No. 5[2]

---

[1] Proof of Claim No. 5 was amended on January 28, 2019.

[2] *See* the Notice of Special and Limited Appearance filed April 9, 2019 at ECF No. 123. The Court would note that to the extent Mr. Belue has filed documents in this case, such as the Notice at ECF No. 123 and the Motion at ECF No. 136, he has not complied with Mont. LBR 1001-1(e), which provides, in part: "FILING THROUGH CM/ECF IS MANDATORY FOR ALL USERS IN ALL BANKRUPTCY CASES AND IN ALL ADVERSARY PROCEEDINGS, EXCEPT *PRO PER* ENTITIES (INCLUDING *PRO PER* CREDITORS WITHOUT COUNSEL)." (Emphasis in original). Although reluctant to permit this "limited appearance" the Court granted the request presuming that Mr. Belue would be familiar with the applicable law and may assist his client in this proceeding and confer with the Chapter 13 Trustee, prior to the hearing.

1

and Debtor otherwise appeared *pro se*. The Chapter 13 Standing Trustee, Robert G. Drummond, also appeared at the hearing. Laura Ollier ("Ollier") and Debtor testified; Debtor's Exhibit A, pages 9 and 10, found at ECF No. 126, was admitted into evidence.

## BACKGROUND

### I. Events Prior to Debtor's Bankruptcy

Debtor executed a Note in the principal amount of $58,850. *See* the attachments to Proof of Claim No. 5-1 filed by SLS on December 11, 2018. SunTrust Mortgage, Inc. was the lender. The Note is secured by a Deed of Trust on property commonly known as 416 N Miles Ave., Hardin, Montana. *Id.* The Deed of Trust was also signed by Debtor. *Id.* Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for SunTrust Mortgage Inc, was the original beneficiary under the Deed of Trust. The Deed of Trust was recorded on April 9, 2014, in Big Horn County, Montana.

MERS executed an Assignment of Deed of Trust, to SunTrust Mortgage, Inc., on or about November 9, 2016. *Id.* The Assignment was recorded a week later in Big Horn County, Montana. *Id.* SunTrust Mortgage, Inc. executed an Assignment of Deed of Trust, to SLS, on or about May 25, 2017. *Id.* The Assignment was recorded on May 31, 2017, in Big Horn County, Montana. At hearings held January 4, 2019, and February 12, 2019, Debtor acknowledged executing the Note and Deed of Trust in favor of SunTrust Mortgage, Inc.[3] Debtor made a payment of $100.00 on the Note on September 1, 2017. It does not appear that Debtor has made a payment since.

---

[3] Consistent with such representation, in a Chapter 7 bankruptcy case filed by Debtor on October 28, 2016, Debtor listed SunTrust Mortgage as having a secured claim in the amount of $52,775.44. *See* Case No. 16-61062. In that case, Debtor did not list SunTrust Mortgage's claim as contingent, unliquidated or disputed.

## II. Debtor's Bankruptcy

Debtor commenced this Chapter 13 bankruptcy *pro se* on October 2, 2018. In her schedules filed November 2, 2018, Debtor lists her fee simple interest in the real property located at 416 N. Miles Ave., Hardin, Montana. At a confirmation hearing held November 29, 2018, the Court denied confirmation of Debtor's amended Chapter 13 plan filed November 23, 2018, and granted Debtor through December 20, 2018, to file another amended plan. The Court rescheduled Debtor's confirmation hearing for January 4, 2019.

In the interim, SLS filed Proof of Claim No. 5 on December 11, 2018, asserting a secured claim of $59,681.28, including an arrearage of $13,797.11. Debtor filed two additional Chapter 13 plans on December 21, 2018; one dated December 19, 2018 (ECF No. 43) and the other dated December 20, 2018 (ECF No. 46). In both plans filed December 21, 2018, Debtor listed Wells Fargo Bank, N.A. as having an unimpaired secured claim, secured by Debtor's homestead. In those plans, Debtor listed the arrearage owing to Wells Fargo Bank, N.A. as $13,797.11, which coincidentally, is the arrearage listed by SLS in its Proof of Claim No. 5 filed December 11, 2018. Wells Fargo Bank, N.A. has not filed a claim in this case.

At another confirmation hearing held January 4, 2019, the Trustee noted that he did not consent to Debtor's most recent plan because that plan provided for payment to Wells Fargo Bank, N.A. rather than SLS. The Court advised Debtor at the hearing that it would "give [Debtor] one last chance to get it right" and granted Debtor through January 25, 2019, to file yet another amended plan and reset Debtor's confirmation hearing for February 12, 2019.[4] At the

---

[4] The Trustee also represented at the January 4, 2019, hearing:

> I've looked at the proof of claim filed by Specialized Loan Servicing. The note is there with the endorsement in blank. It appears to be barer paper. The loan history, loan payment history on the form attached to the proof of claim actually goes back to March

3

request of Debtor and per an Order entered January 22, 2019, at ECF No. 70, the Court granted Debtor until February 1, 2019, to file that amended plan, which Debtor finally filed on April 9, 2019, at ECF No. 124.

Between the January 4, 2019, confirmation hearing and the February 12, 2019, hearing, SLS amended its Proof of Claim No. 5 on January 28, 2019, asserting that its claim was now $61,229.13, which included an arrearage of $15,344.96.[5] SLS's amended Proof of Claim is accompanied by a Loan Payment History from June 1, 2017, to Debtor's petition date, which shows all charges and payments. SLS also filed its Motion to Modify Stay and Debtor filed her Motion to Compel SLS to Produce Documents, which matters were scheduled for hearing on February 12, 2019, to be held in conjunction with Debtor's continued confirmation hearing.

The issues that remain pending in this case, including Debtor's inability to formulate a confirmable Chapter 13 plan, all stem from Debtor's belief that SLS is not the proper party to enforce the Note and Deed of Trust. Debtor's contention is that she did not sign any note or other contract with SLS, and SLS is not the holder of the Note. Debtor argues that the evidence shows SunTrust Mortgage is the holder of her Note and the real party in interest. SunTrust Mortgage has not filed a claim in this case. At the February 12, 2019, hearing, the following exchange took place between the Court, the Trustee, counsel for SLS and Debtor:

> THE COURT: Okay. So, if we had a hearing, and Mr. Porter called a witness from SLS, and you got a chance to question the witness, would that resolve this for you?

---

of 2017. So, I will represent to the court that after reviewing the proof of claim, it appears that the creditor is Specialized Loan Servicing, and that the plan should address Specialized Loan Servicing in order to meet the requirements for confirmation at § 1325(a)(5).

[5] The increase of $1,547.85 in SLS's total claim and in the arrearage relate to foreclosure attorney fee ($73.75), post cost ($80.00), publication ($1.343.10), and recording costs ($49.00) incurred by SLS on December 27, 2018.

DEBTOR: If we have the hearing and I can present my case and question the witness and have -- present my documents, yes.

THE COURT: Okay. And that would satisfy you?

DEBTOR: Yes.

THE COURT: And you would feel that, you know -- Mr. Porter, would you have the ability to get a witness from SLS?

SLS'S COUNSEL: I think so, Your Honor.

* * *

THE COURT: I understand. It seems that -- it just -- I mean, I am sensitive to the cost. I am, particularly in light of Mr. Drummond's comments, reluctant to prolong these proceedings.

SLS'S COUNSEL: Your Honor, if I may, the other thing I was thinking is, in reference to the motion to lift the stay, I don't believe that Ms. Rickert's response even contests that she owes money on a loan. She's just contesting that she doesn't want to pay those sums to Specialized Loan Servicing. So, I think it's a similar objection to the objection to the claim. I haven't seen anything in her filings that –

THE COURT: Right. I agree. I agree.

SLS'S COUNSEL: Regarding the post-petition delinquency.

THE COURT: Well, and I think Ms. Rickert just clarified that with me. I mean, I sort of asked: Is the only issue the name of the creditor? And as I understand it, that is the singular issue. It's whether it's Specialized Loan Servicing, or I think she contends it's Wells Fargo based on her reading of, I think, a response she –

DEBTOR: I contend that it's SunTrust Mortgage, according to the MERS documentation.

THE COURT: Okay.

SLS'S COUNSEL: . . . As I said in the prior confirmation hearing, SLS would even stipulate to the name change about having her file a plan if she's willing to do so. I know that she's not. But I don't see any reason for –

THE COURT: They would stipulate to her putting SunTrust in her plan?

SLS'S COUNSEL: No. No. No. To her stipulating to putting Specialized Loan Servicing, rather than having to file an amended plan. We're willing to -- I don't even know if that's a possibility, but –

5

> THE COURT: Well, I don't think she has -- I don't want to speak for you, Ms. Rickert, but as I understand it, you have no interest in stipulating to that. I mean, that's the whole point of this; correct?
>
> DEBTOR: You mean the plan just as I have it? Putting Specialized Loan Servicing instead of SunTrust Mortgage?
>
> THE COURT: Right.
>
> DEBTOR: I would certainly consider that.
>
> THE COURT: You would?
>
> DEBTOR: I'll consider that.
>
> THE COURT: I mean, that would resolve all these issues, and I would enter an order if that's the agreement that you would reach with –
>
> DEBTOR: Can you give me time to think about it?
>
> THE COURT: Well, I can. Mr. Drummond, you were going to say something.
>
> MR. DRUMMOND: Well, I was just wondering if it was going to make a difference to the debtor if Specialized Loan Servicing showed up at a continued hearing with the original note.
>
> THE COURT: Right. Right. But even that goes beyond what I think the law requires.

ECF Nos. 98 and 113. After further discussions with the parties, counsel for SLS agreed to have an SLS representative testify at the continued hearing, which was agreeable to Debtor. Next, the Court discussed the format of the hearing with the parties.

> THE COURT: And Ms. Rickert, you don't have any objection to SLS's counsel appearing by video?
>
> DEBTOR: Absolutely not.
>
> THE COURT: And do you have any objection to his witness appearing by video?
>
> DEBTOR: No, I do not.
>
> THE COURT: Okay. So, you would not require [SLS's] witness to be here in the chair? They could appear by video, as well?
>
> DEBTOR: I was actually going to suggest that for them, for their convenience.
>
> THE COURT: All right. So did you hear that, Mr. Porter? So, your witness could appear by video.

>SLS'S COUNSEL: Very well. I'll make sure they have a copy of the Note in hand so they can testify as to that.
>
>THE COURT: Does that satisfy you, Ms. Rickert, that they have a copy of the Note that was filed with the proof of claim?
>
>DEBTOR: I would like to see it. I don't know if there's any way to -- well, if you could show it as certified and notarized, yeah, I can see that.
>
>SLS'S COUNSEL: We could bring it; have them in person. But I think we could certainly show it to the court and testify.
>
>DEBTOR: That's fine.
>
>\* \* \*
>
>THE COURT: Okay. All right. So -- all right. Then what we'll do is: We are going to continue the motion to modify stay, the motion to compel, we will continue those to April 11th. We will have a hearing on April 11th that involves those issues, as well as the trustee's motion to dismiss and Ms. Rickert's objection to the proof of claim.
>
>DEBTOR: Okay.
>
>THE COURT: Okay? And as I said, I'll be prepared to rule on those issues. And my expectation is that when we leave that hearing on that date, everyone knows for once and for all where they stand. So, you know, there will be certainty of outcome for the trustee, for Ms. Rickert, and for your client, Mr. Porter. Okay? Because at the end of the day, I think that's what everybody wants. Ms. Rickert, I think that that's ultimately what you want, as well.
>
>DEBTOR: Yes. I agree.

ECF Nos. 98 and 113. Based on the representations of Debtor and SLS the Court rescheduled the hearing for April 11, 2019.

At the hearing held April 11, 2019, Ollier, who is employed in the default litigation department at SLS, appeared by video and testified under oath that she had in her physical possession the Note that Debtor signed on or about March 26, 2017. Ollier testified that SunTrust Mortgage was the original creditor lender, but that the Note was transferred to SLS for servicing on or about May 23, 2017. Ollier testified that in May of 2017, SLS took possession of the Note. The Note was indorsed in blank. SLS is both the servicer and custodian of the Note.

At the conclusion of Debtor's case-in-chief, Debtor's counsel moved for a directed verdict, which the Court denied. At the conclusion of the hearing, Debtor's counsel moved to retract Debtor's agreement that SLS's witness could appear by video. Debtor's counsel stated that mistake was the grounds for the retraction of Debtor's prior agreement. That request was also denied. The Court has already made extraordinary accommodations for Debtor and the Court agrees with the comment made by SLS's counsel that it is questionable whether Debtor would be satisfied if SLS's witness appeared in person with the original Note and Deed of Trust in hand.

Following the hearing, Debtor filed on April 22, 2019, at ECF No. 136 a "Motion to Admit Additional Evidence, to Make a Finding Against Special Loan Servicing, LLC (SLS), and to Reject Proof of Claim No. 5," which is accompanied by a letter dated April 3, 2019, from SLS to Debtor in which SLS identifies itself as the "third-party account servicer" and identifies the original creditor as SunTrust Mortgage, Inc. and the current creditor as Federal Home Loan Mortgage Corporation. The letter of April 3, 2019, is very similar to a letter dated July 17, 2017, that Debtor admitted into evidence as Exhibit A, wherein SLS identifies itself as "the current servicer of your mortgage loan 1013717569" and identifies the original creditor as SunTrust Mortgage, Inc. and the current creditor as Federal Home Loan Mortgage Corporation. The letter dated April 3, 2019, is duplicative evidence and does not assist this Court in making its decision.

## APPLICABLE LAW and DISCUSSION

### I. Debtor's Objection to SLS's Proof of Claim No. 5

"A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute *prima facie* evidence of the validity and amount of the claim." FED.R.BANKR.P. 3001(f). This evidentiary presumption is a rebuttable one. *Litton Loan*

8

*Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706 (9th Cir. BAP 2006); *In re Eiesland*, 19 Mont. B.R. 194, 208–09 (Bankr. D. Mont. 2001). "The mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as '*prima facie*' evidence of the claim's validity and amount." *Id*. at 706-07. Thus, a properly executed proof of claim constitutes *prima facie* evidence, and "[o]ne rebuts evidence with counter-evidence." *Id*. For the reasons explained below and following the holding of my predecessor in *In re Hofman*, 488 B.R. 157, 159 (Bankr. D. Mont. 2013) and of the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 9121 (9th Cir. BAP 2011), I first find SLS has standing to file its proof of claim as the party entitled to enforce the Deed of Trust signed by Debtor under Montana law.

In *Veal* the BAP held "that a party has standing to prosecute a proof of claim involving a negotiable promissory note secured by real property if, under applicable law, it is a 'person entitled to enforce the note' as defined by the Uniform Commercial Code." *Veal*, 450 B.R. at 902. The evidence shows that SunTrust Mortgage was the initial payee of the Note. Therefore, SLS is required to demonstrate facts sufficient to establish its standing. *Veal*, 450 B.R. at 907 n. 11, 913. SLS cannot rely on the evidentiary presumption of its Proof of Claim based upon F.R.B.P. 3001(f), because if a claim is challenged on the basis of standing the creditor must first satisfy the standing requirement of Rule 3001(b) to avail itself of the presumptions contained in Rule 3001(f). *Veal*, 450 B.R. at 922.

Debtor confirmed that she signed the Note dated March 26, 2014, and the Deed of Trust. SunTrust Mortgage indorsed the Note in blank. A promissory note qualifies as a negotiable instrument under Montana law. Mont. Code Ann. § 30-3-104(1) and (2) (defining a negotiable instrument), *In re Tipton*, 2013 WL 141141, *2 (D. Mont. 2013). "Indorsement" means a

9

signature made on an instrument for the purpose of negotiating the instrument. Mont. Code Ann. § 30-3-203. An indorsement constitutes a "blank indorsement" if the indorsement does not identify the person to whom the instrument is made payable. Mont. Code Ann. § 30-3-204(1) and (2). An instrument indorsed in blank is payable to the bearer of the instrument, and it may be negotiated by transfer of possession of the instrument alone. Mont. Code Ann. § 30-3-204(2). A person who is the holder of a negotiable instrument endorsed in blank is the person entitled to enforce the instrument. Mont. Code Ann. § 30-3-301, and *In re Tipton*, at *2.

In this case, the Note is indorsed in blank, *see* page 3 of 27 of the attachments to SLS's Proof of Claim 5-1, SLS has possession of the original Note. Ollier testified possession of the Note was transferred to SLS. She explained that she had retrieved the Note from the vault in connection with the hearing. Thus, SLS is the holder of the instrument and is entitled to enforce it.[6] *See* Mont. Code Ann. § 30-3-301. Debtor offered no evidence to refute that SLS is the holder of the Note, and Mont. Code Ann. § 30-3-301 allows the holder of a note to enforce the note.

Pursuant to Mont. Code Ann. § 71-1-305, mortgage law applies to trust indentures. Under Mont. Code Ann. § 71-1-110 the "assignment of a debt secured by mortgage carries with it the security." The attachments to SLS's Proof of Claim No. 5 show that various assignments of the Deed of Trust were made in conjunction with the transfer of the Note to SLS. An Assignment dated November 7, 2016, *see* page 19 of 27 of the exhibit attached to SLS's Proof of Claim No. 5-1, shows an assignment of the Deed of Trust from MERS, as nominee for SunTrust Mortgage, to SunTrust Mortgage. The Assignment dated November 7, 2016, was recorded in Big Horn County on November 16, 2016. Subsequently, the Assignment dated May 24, 2017, *see* page 22 of 27 of the exhibit attached to SLS's Proof of Claim No. 5-1, shows an assignment

---

[6] This was established early in Ollier's testimony.

of the Deed of Trust from SunTrust Mortgage to SLS. The Assignment dated May 24, 2017, was recorded in Big Horn County on May 31, 2017. Thus, SLS is entitled under Mont. Code Ann. §§ 30-3-301 and 71-1-110 to enforce the Note and assignment of the Deed of Trust.

Having concluded SLS has standing to enforce the Note, the Court next turns to SLS's claim. Debtor's objection and arguments at the hearing sought to draw a distinction between SLS's role as servicer and the underlying "owner" of the Note, Federal Home Loan Mortgage Corporation. Debtor argues that SLS's claim to be the creditor in this proceeding is inconsistent with a letter she received, which identifies SLS as the servicer and Federal Home Loan Mortgage Corporation as the owner. This distinction and its importance are misunderstood by Debtor. A party's legal right to enforce a note is not determined by the label they place on themselves.

As explained in *Veal*, 450 B.R. at 910–12:

> Contrary to popular opinion, these rules do not absolutely require physical possession of a negotiable instrument in order to enforce its terms. Rather, Article 3 states that the ability to enforce a particular note—a concept central to our standing inquiry—is held by the 'person entitled to enforce' the note. UCC § 3–301.
>
> * * *
>
> [T]he maker should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note. Or, to put this statement in the context of this case, the Veals should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay. Returning to the patois of Article 3, so long as they know the identity of the "person entitled to enforce" the Note, the Veals should be content.

SLS has established it is the party with the right to enforce the Note. As noted in *Veal*, Debtor should not care who owns the Note. Debtor's singular inquiry should be the identity of the party "entitled to enforce the note" without regard to their characterization as servicer, creditor, or owner.

11

For the reasons discussed above the Court concludes that SLS executed and filed its proof of claim in accordance with the Federal Rules of Bankruptcy Procedure. Thus, its proof of claim provided *prima facie* evidence as to the validity and amount of its claim and the burden was thus on Debtor to supply sufficient evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991)). Debtor offered no evidence to refute the validity of SLS's claim.

Debtor's objection to SLS's Proof of Claim No. 5 is overruled.

**II. SLS's Motion to Modify Stay**

SLS was owed $61,529.90 as of December 31, 2018. Debtor has not made a post-petition payment to SLS and in fact, does not appear to have made a payment to SLS since September of 2017. In addition, other than her first Chapter 13 plan filed November 2, 2018, Debtor has filed Chapter 13 plans that provide for no secured creditors, or provide for the alleged secured claims of Wells Fargo Bank, N.A. or Federal Home Loan Mortgage, neither of which have filed a claim in this case. The debt owed to SLS is secured by Debtor's home in Big Horn County that according to SLS, has a fair market value of $120,000. The Chapter 13 Trustee filed a contingent consent to SLS's Motion to Modify Stay on January 28, 2019, at ECF No. 73.

SLS seeks relief from the state under 11 U.S.C. § 362(d), but fails to identify a particular subsection. Debtor has, by SLS's own admission, equity in her home. Therefore, § 362(d)(2) is not applicable. This case is not a single asset real estate case and thus, § 362(d)(3) is not applicable, and finally, SLS has not argued that Debtor commenced this case as part of scheme to delay, hinder or defraud SLS. Consequently, § 362(d)(4) is not applicable. This leaves

remaining § 362(d)(1), which provides that "the Court shall grant relief rom the stay . . . for cause."

This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.,* 18 Mont. B.R. 199, 211–12 (Bankr. D. Mont. 2000):

> What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *[In re] Tucson Estates, [Inc.,]* 912 F.2d [1162] at 1166 [ (9th Cir. 1990) ]. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369–70 (9th Cir. BAP 2003); *In re Leisure Corp.,* 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477–78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–109 (9th Cir. 1995).

"[A] debtor's persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay." *In re Aguilar*, 2014 Bankr. WL 6981285 (9th Cir. BAP 2014) (53 missed payments "cause" for stay relief). *See also, In re Ellis*, 60 B.R. 432, 435 (9th Cir. BAP1985) (7 missed payments after confirmation can be grounds for stay relief). Here, Debtor's has failed to make payments to SLS for approximately 19 months Further, Debtor has refused to provide for SLS in her Chapter 13 plan. Instead, she has steadfastly ignored the suggestions of the Court and Chapter 13 Trustee. At the first hearing, held November 29, 2018, the Court reviewed the objections to confirmation with Debtor, and

suggested a course of action that may contribute to Debtor's ability to confirm a plan. The Trustee also volunteered to meet with Debtor after the hearing to discuss the issues.

At the next hearing, January 4, 2019, the Court raised with Debtor concerns that Debtor's pleadings were prepared with "internet law." For example, Debtor's pleadings referred to proof in blue ink, the Hardin Territory, Montana Republic, indicated Debtor had attempted to trademark her name, and included the reference, "living breathing man" in the affidavit. These are the hallmarks of internet law, and the Court cautioned Debtor against proceeding with frivolous filings that are found on the internet. At this same hearing, the Chapter 13 Trustee advised the Court that he had reviewed the SLS claim, the Note was indorsed in blank, and if Debtor revised her plan to include SLS, the plan was confirmable. Although this case had been pending now for more than 6 months, Debtor has not confirmed a plan, and in a more recent filing, the Debtor asserts, "the most accurate and truthful plan submitted under perjury would not show any entity as a Secured Creditor as the alleged debt for both Federal Home Loan Mortgage and Specialized Loan Servicing, LLC does nor exist and is moot." ECF No. 135. Rather than subject SLS to further delay that results from frivolous pleadings, delay that increases its attorney's fees and costs and otherwise prejudices it, Debtor's failure to make post-petition payments coupled with her pattern of presenting legal theories devoid of any merit to the Court, cause exists for granting SLS stay relief. SLS's Motion to Modify Stay is granted.

**III. Debtor's Motion to Compel**

In her Motion to Compel, Debtor seeks an order from this Court compelling SLS to produce various documents. Debtor agreed to allow a representative of SLS to appear and testify by video with the original Note and Deed of Trust. The Motion to Compel was thus satisfied when Ollier appeared via video with the original Note and Deed of Trust and testified.

### IV. Confirmation of Debtor's Chapter 13 Plan

Debtor's Plan filed December 21, 2018, at ECF No. 46 was before the Court for approval. However, Debtor has since filed a new amended plan dated April 9, 2019, at ECF No. 124. The amended plan is a concession that the Plan filed December 21, 2018, at ECF No. 46 is not confirmable. As a result, confirmation of the Plan filed December 21, 2018, at ECF No. 46 will be denied. The Court will schedule another hearing to determine whether Debtor's Chapter 13 Plan filed at ECF No. 124 is confirmable.

In accordance with the above, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor's "Motion to Admit Additional Evidence, to Make a Finding Against Special Loan Servicing, LLC (SLS), and to Reject Proof of Claim No. 5," filed April 22, 2019, at ECF No. 136 is denied.

IT IS FURTHER ORDERED that confirmation of Debtor's Chapter 13 Plan filed December 21, 2018 at ECF No. 46 is denied; and a hearing on confirmation of Debtor's Chapter 13 Plan filed April 9, 2019, at ECF No. 124 shall be held **Tuesday, May 28, 2019, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the ELLA KNOWLES COURTROOM, 4TH FLOOR ROOM 4805, JAMES F. BATTIN UNITED STATES COURTHOUSE, 2601 2ND AVENUE NORTH, BILLINGS, MONTANA.

IT IS FURTHER ORDERED that Specialized Loan Servicing, LLC's Motion to Modify Stay filed January 22, 2019 at ECF No. 67 is granted; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Specialized Home Servicing, LLC to pursue its non-bankruptcy remedies with respect to the following property of the estate:

> South Half (S1/2) of Lot (REDACTED) and the South Half (S ½) of Lot Two (REDACTED) of Block One (REDACTED) of Egnew Addition to the City of Hardin, Montana, according to the recorded plat thereof.

IT IS FURTHER ORDERED that Debtor's Objection to Proof of Claim No. 5 filed by Specialized Loan Servicing, LLC is overruled; Debtor's Motion to Strike the Proof of Claim No. 5 of Specialized Loan Servicing, LLC Filed by Natalie E. Lea, Non-Party, from Bonial & Associates, P.C. for Specialized Loan Service LLC by Unjust Enrichment filed April 10, 2019, at ECF No. 127 is denied; Debtor's Amended Motion to Strike the Fraudulent Proof of Claim No. 5 of Specialized Loan Servicing, LLC Filed by Natalie E. Lea, Non-Party, from Bonial & Associates, P.C. for Specialized Loan Service LLC filed April 26, 2019, at ECF No. 141 and the hearing on Debtor's Motion to Strike and Amended Motion to Strike scheduled for May 2, 2019, is vacated.

IT IS FURTHER ORDERED that Debtor's Motions to Compel filed January 31, 2019, at ECF No. 74 and April 8, 2019, at ECF No. 116 are denied as moot.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana